Argued and submitted January 16, reversed and remanded for reconsideration
August 8, 2001

In the Matter of the Compensation of
Mark D. Stapleton, Claimant.

Mark D. STAPLETON,
*Petitioner,*

*v.*

LIBERTY NORTHWEST INSURANCE CORPORATION
and Avison Lumber Company,
*Respondents.*

98-09077; A108343

29 P3d 1174

James O. Marsh argued the cause for petitioner. With him
on the brief was Carney, Buckley & Hays.

David O. Wilson argued the cause for respondents. On the
brief was Alexander D. Libmann.

Before Haselton, Presiding Judge, and Deits, Chief Judge, and Wollheim, Judge.

WOLLHEIM, J.

## WOLLHEIM, J.

■    Claimant seeks review of an order of the Workers' Compensation Board that concluded that claimant did not timely file an aggravation claim before his aggravation rights expired. We review the Board's legal determinations for errors of law and factual issues for substantial evidence. ORS 183.482(7), (8). Because the Board failed to explain why range of motion measurements documented in the physician's report accompanying the aggravation claim did not constitute objective findings, we reverse and remand for reconsideration.

The facts are uncontested. Claimant suffered a compensable injury to his right elbow in 1992. That claim was accepted as a nondisabling injury. Two years later, insurer announced that it had knowledge that the injury had become disabling and accepted the claim as disabling. In 1995, claimant's claim was closed by a determination order that awarded claimant permanent partial disability (PPD) and that notified claimant that his aggravation rights would expire five years from February 6, 1992.

On January 8, 1997, claimant's physician, Dr. Greenleaf, completed an aggravation claim form and wrote a chart note following an examination of claimant. The pertinent portions of the chart note explained:

> "[Claimant] has been experiencing some residual problems in his right elbow, with radiating pain from the anterior portion of the elbow down into the [illegible], as well as some tenderness over the olecranon fossa.

> "On examination, range of motion is from about 3-135°. Gross motor and sensory exam is intact. Forceful flexion and extension produce tenderness both in the anterior and posterior portions of the elbow. Pronation and supination are full. There is no evidence of elbow instability.

> "Repeat xrays do not show any evidence of new loose bodies or osteochondrosis."

The aggravation claim form and the chart note were mailed together to insurer. Insurer received the documents on February 3, 1997, before the February 6, 1997, expiration date for claimant's aggravation rights.

After requesting further information from Greenleaf, insurer accepted claimant's aggravation claim in April 1997. After claimant underwent surgery, insurer issued an updated notice of acceptance, which noted that the accepted aggravation condition was post-traumatic osteoarthritis of the right elbow. A March 1998 notice of closure awarded claimant temporary disability benefits and 17 percent scheduled PPD for claimant's right arm.

In October 1998, almost 18 months after insurer formally accepted the aggravation claim, insurer wrote to claimant advising him that his claim had been processed incorrectly. Insurer explained that claimant's attending physician had not properly perfected an aggravation claim before claimant's aggravation rights had expired and that the claim should have been classified as an own motion claim.[1] Insurer later wrote to the Board and requested own motion relief for claimant. The Board subsequently issued an own motion order reopening the claim and then another order awarding temporary disability benefits. At claimant's request, the Board abated the own motion order and postponed action until pending litigation was resolved.

Claimant requested a hearing to review the "denial" of his aggravation claim. At that hearing, claimant argued that insurer had improperly issued a back-up denial of his previously accepted aggravation claim and sought penalties and attorney fees. Insurer argued that the Hearings Division did not have jurisdiction over the matter and that the request for hearing should be dismissed. In her opinion and order, the administrative law judge (ALJ) first addressed the issue of jurisdiction and explained:

---

[1] ORS 656.278 provides that the Board may, upon its own motion, modify, change or terminate former findings, orders or awards under certain circumstances. Subsection (5) of that provision also authorizes insurers or self-insured employers to "voluntarily reopen any claim to provide benefits or grant additional medical or hospital care to the claimant."

"[C]laimant contends that [Greenleaf's] chartnotes show limited range of motion findings and pain complaints. Claimant argues that because there were no pain complaints at the time of closure, [Greenleaf's] chartnotes establish a worsening.

"After reviewing [Greenleaf's] chartnotes, I conclude that they are insufficient to establish objective findings that claimant has suffered a worsened condition attributable to the compensable injury. [Greenleaf] found no evidence of elbow instability and reported that repeat x-rays did not show any evidence of new loose bodies or osteochondrosis. Additionally, [Greenleaf's] assessment was 'ruleout continued degenerative areas in elbow.' In light of such comments, and without further explanation by [Greenleaf], I am unable to find that the report was [sic] satisfies the requirements of ORS 656.273(3).

"Under the circumstances, I conclude that claimant did not perfect an aggravation claim prior to his aggravation rights expiring."

The ALJ then addressed the issue of whether insurer's letter informing claimant that the claim had been improperly processed constituted a back-up denial. She concluded that the letter did not constitute a back-up denial because it did not deny compensation to claimant.

On review, the Board summarily adopted and affirmed the ALJ's reasoning and conclusion that Greenleaf's report did not satisfy the requirements of ORS 656.273(3), explaining that claimant had not perfected an aggravation claim before his aggravation rights expired. The Board's order then further analyzed claimant's back-up denial arguments and affirmed the ALJ's order.

Claimant seeks judicial review and makes three assignments of error. First, claimant argues that the Board erred in concluding that claimant did not perfect the filing of his aggravation claim before the expiration of his aggravation rights. Second, claimant argues that the Board erred when it concluded that insurer was not estopped from rescinding its prior acceptance of claimant's aggravation claim and reclassifying that claim into own motion status. Finally, claimant argues that the Board erred when it did not

conclude that insurer's letter rescinding the acceptance of claimant's aggravation claim constituted a back-up denial of claimant's previously accepted claim. Because we reverse and remand on the first assignment of error, we do not address the second or third assignments.

ORS 656.273 sets out the requirements for filing an aggravation claim and provides, in part:

"(2) To obtain additional medical services or disability compensation, the injured worker must file a claim for aggravation with the insurer or self-insured employer. * * *

"(3) A claim for aggravation must be in writing in a form and format prescribed by the director and signed by the worker or the worker's representative. The claim for aggravation must be accompanied by the attending physician's report establishing by written medical evidence supported by objective findings that the claimant has suffered a worsened condition attributable to the compensable injury.

"(4)   * * *

"(b) The claim for aggravation must be filed within five years after the date of injury, provided that the claim has been classified as nondisabling for more than one year after the date of injury * * *."

Thus, for an aggravation claim to be perfected, the statute requires claimant to contact insurer in a timely manner, to provide insurer with the proper aggravation claim form, and to include with the claim form a physician's report that establishes "by written medical evidence supported by objective findings that the claimant has suffered a worsening condition attributable to the compensable injury." ORS 656.273(3). "Objective findings" is defined by ORS 656.005(19):

" 'Objective findings' in support of medical evidence are verifiable indications of injury or disease that may include, but are not limited to, *range of motion,* atrophy, muscle strength and palpable muscle spasm. 'Objective findings' does not include physical findings or subjective responses to physical examinations that are not reproducible, measurable or observable." (Emphasis added.)

Insurer received the documents at issue in a timely manner.[2] Those documents included a notice of claim for aggravation of occupational injury or disease as prescribed by the Department of Consumer Business and Services in accordance with ORS 656.273(3). That form was signed by claimant and the physician. The form included an instruction to the physician to "[s]ubmit this form to the insurer within five days of your receipt, along with your written report of medical evidence supported by objective findings of the worsened condition attributable to the compensable condition." The accompanying written report consisted of the chart note quoted above.

■      At issue is whether the chart note satisfied the requirements of ORS 656.273(3). The Board concluded that there were no objective findings contained in the report. The Board's analysis emphasized those things that Greenleaf explained were *not* present in the record, *i.e.*, there was no evidence of elbow instability or new loose bodies or osteochondrosis in the elbow. However, the Board failed to explain why the chart note's range of motion measurements, which by statute constitute objective findings, did not constitute objective findings in this instance or otherwise did not satisfy the requirements of ORS 656.273(3). Consequently, we reverse and remand for the Board to consider whether the chart note's range of motion measurements constitute objective findings and, if they do not, to explain why not. *See Iles v. Fred Meyer, Inc.*, 173 Or App 254, 258, 21 P3d 195 (2001) (Board's order must provide a sufficient explanation of its reasoning to allow a reviewing court to examine the agency's action). If the range of motion requirements do constitute objective findings, then the Board needs to consider whether the filing requirements of ORS 656.273 were met by claimant.

Reversed and remanded for reconsideration.

_____

[2] The parties stipulated that insurer's claims department received, on February 3, 1997, an aggravation claim form, Greenleaf's chart note quoted above, and a second chart note. The parties also stipulated that insurer received, on February 5, 1997, an analysis of claimant's MRI scan, conducted by Dr. Perry.